NO. 5:10-CV-554-FL

| | | |
|---|---|---|
| VICTOR KEFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| KROGER LIMITED PARTNERSHIP I, | ) | |
| doing business as KROGER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the court on defendant's motion for summary judgment (DE # 16). Plaintiff timely filed response in opposition, and defendant filed reply. In this posture, the issues raised are ripe for review. For the following reasons, the court grants defendant's motion for summary judgment.

## STATEMENT OF THE CASE

In October 2010, plaintiff filed summons and complaint in Wake County Superior Court. On December 7, 2010, defendant removed to this court based on federal jurisdiction. Plaintiff's complaint alleges violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.*, violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et. seq.*, for race and gender discrimination, and negligent infliction of emotional distress ("NIED") under North Carolina law.

On January 21, 2011, the court entered case management order establishing various

deadlines. On November 1, 2011, the court of its own initiative, entered order continuing trial and associated deadlines until decision was reached on the instant motion.

## STATEMENT OF THE FACTS

The parties have had opportunity to engage in discovery and have done so. The undisputed facts are as follows.

Plaintiff, a fifty-four (54) year-old white male, is currently employed by defendant as a Loss Prevention Manager.[1] Plaintiff has been employed at defendant in various positions since 1974. During the course of his employment, plaintiff obtained a bachelor's degree in computer information systems, and participated in defendant's management program. At that time, plaintiff was a co-manager and/or associate manager of defendant's stores in West Virginia and Virginia. Plaintiff was promoted on more than one occasion, and ultimately accepted a position as District Produce Manager in North Carolina. Thereafter, plaintiff applied for and obtained the position of Customer Service Technology Risk Coordinator. This position was subsequently entitled "Operations Coordinator." The position included being in charge of Enterprise Labor Management concerning employee hours and sales, floor care, loss prevention, risk management, technology, shrink, and safety coordinator.

While plaintiff was Operations Coordinator, he reported to the district manager, Tim Smothers ("Smothers"). Smothers evaluated plaintiff's performance. Plaintiff generally received very good performance reviews. In 2009, plaintiff applied for a Produce Sales Manager position. (Coates Decl. ¶¶ 6-11). Plaintiff was granted an interview, and was interviewed by his supervisor, Robert C. Coates ("Coates"), a fifty-nine (59) year old white male with whom plaintiff acknowledges

---

[1] Plaintiff was fifty-three (53) years old at the time of the filing of his complaint.

2

he always got along well. Ultimately, plaintiff did not receive the job as a more qualified candidate was selected.

In 2010, defendant's mid-Atlantic division, where plaintiff worked, underwent a significant corporate reorganization and transition. Many jobs were redistributed, some jobs were eliminated, and new jobs were created. All of the coordinators, including plaintiff, had to reapply for newly created positions. One such position was that of Operations Coordinator. This position had the same title as plaintiff's previous position, however, after the reorganization this position had higher seniority and increased responsibilities (Stewart Decl. ¶ 14.) Plaintiff's previous position was eliminated in the transition. (Pl.'s Depo. 69:11-16.) After the reorganization, to assist in the transition, plaintiff continued to be responsible for various duties previously assigned to his old position. Another newly created position was that of Loss Prevention Manager, a position that focused on risk management.

During the reorganization, Smothers and Vice President of Operations Marlene Stewart ("Stewart") decided who would receive interviews for the newly created positions. Stewart is a fifty-five (55) year-old white female. Smothers made recommendations to Stewart as to his first, second, or third top choices for particular positions. Stewart and Jay Cummins, the mid-Atlantic division president, made the final decisions as to who would fill the positions. Stewart later informed Smothers who was selected for each position.

Plaintiff applied to interview for several post-reorganization positions. These included the newly created Operations Coordinator position described above, the Produce Sales Manager position that he unsuccessfully applied for in 2009, the newly created Loss Prevention Manager position, and

3

two existing Produce Coordinator positions in different districts.[2] Plaintiff was granted interviews for the latter three positions, but was not granted interviews for the newly created Operations Coordinator or Produce Sales Manager positions. Plaintiff received the newly created Loss Prevention Manager position. The individual who received the newly created Operations Manager position was a forty-nine (49) year-old white male named David Kees. (Miles Decl. ¶ 19.) Andrea Tyson ("Tyson"), a thirty-six (36) year-old black female, received the Produce Sales Manager position. The other two produce coordinator positions for which plaintiff interviewed did not change substantially and were offered to the individuals who previously held them.

Plaintiff's old position as Operations Coordinator had a pay scale grade of six or seven. (See Miles Decl. ¶¶ 10, 16.)[3] After the reorganization, the newly created Operations Coordinator position had a pay grade of nine. The Produce Sales Manager position also had a pay grade of nine. The position plaintiff received, Loss Prevention Manager, had a pay grade of five. However, to prevent plaintiff from experiencing a decrease in salary, he continued to receive a pay level of seven in his new position. In June 2011, defendant changed the pay level for Loss Prevention Manager to a level seven, and plaintiff received another pay raise effective June 2011. (Miles Decl. ¶ 16.)

Plaintiff generally got along well with his managers and superiors, though he had a tense meeting with Smothers when plaintiff did not receive an interview for the newly created Operations Coordinator position. Additionally, the record includes testimony from plaintiff, who recalled certain comments made by Smothers, such as "the old West Virginia guys," "been around forever,"

---

[2] Smothers conducted some of the interviews, but did not attend the interviews for either produce coordinator position for which plaintiff applied.

[3] While the record is unclear as to what plaintiff's precise pay level was prior to the reorganization, there is no dispute that plaintiff's post-reorganization pay level was lower, but that his actual pay did not decrease, as noted above.

4

"always on vacation," "is that all of the vacations you had this year?" (Pl.'s Depo. 110:3-7, 11:16-19, 11:10-18.) Plaintiff reported these comments to Coates, who told plaintiff he would look into the matter.

As a result of the transition and reorganization, and disappointment over which position he received, plaintiff suffered stress, but the record reflects he never saw a doctor or medical professional for any stress or stress related issues.

On June 12, 2010, plaintiff filed his charge with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's charge alleges that the discrimination took place April 19, 2010, when he was not allowed to interview for the Operations Coordinator position and was forced to accept a demotion. While plaintiff's complaint and EEOC charge, as well as his own testimony, suggest that the primary thrust of his complaint was not being allowed to interview for the newly created Operations Manager position, he attached a handwritten sheet to his EEOC intake questionnaire that denotes that he was not allowed to interview for a "sales manager position" that went to Tyson, who plaintiff alleged had "no background in produce at all." (DE # 22 p. 10.)

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material

5

fact requiring trial. <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

B.    Analysis

     1.    Claims Not Included in EEOC Charge

Defendant argues that the court lacks subject matter jurisdiction over any claims plaintiff raises for the first time in his complaint that were not included in his EEOC charge. Defendant notes that plaintiff's complaint mentions several positions that he did not receive, while his EEOC charge only mentions failure to receive the newly created Operations Coordinator position.

Plaintiff's response points out that on the pages plaintiff attached to his intake questionnaire in the EEOC charge, he mentioned his failure to receive the product sales manager position that was offered to Tyson, who is a younger, black female. Plaintiff attached the handwritten document to his response in which he mentions the produce sales manager position. (<u>See</u> DE # 22 p. 10.) Defendant does not contest this document in its reply, nor does defendant appear to continue to argue that plaintiff's claims regarding the produce sales manager position were not included in the EEOC charge.[4]

Additionally, plaintiff's response in opposition, however, makes clear that plaintiff's claims regarding the alleged ADEA and Title VII violations as well as NIED are based on the Operation's Coordinator's position and the produce sales manager position. (Resp. Opp'n 10.) As such, the

---

[4] The court further notes that under the case cited by plaintiff, <u>Fed. Express Corp. v. Holowecki</u>, 552 U.S. 389, 402-03 (2008), plaintiff's handwritten document attached to the EEOC charge is properly considered part of his charge as reasonably construing the document would lead to a conclusion that plaintiff is requesting the EEOC to "activate its machinery and remedial processes." 552 U.S. at 402. At the very least, defendant does not dispute that plaintiff's EEOC charge included reference to the produce sales manager position that plaintiff interviewed for in 2009 and applied for in 2010, both times unsuccessfully.

6

court focuses its analysis on both of these positions.

    2.      Discrimination and NIED Claims

        a.      Burden of Proof under ADEA

Defendant argues that under the 2009 Supreme Court decision of <u>Gross v. FBL Fin. Servs.,</u> <u>Inc.</u>, 129 S.Ct 2343, 2352 (2009), a plaintiff bringing a disparate treatment claim under the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. <u>Id.</u>; <u>see also</u> <u>Bodkin v. Town of Strasburg</u>, 386 F. App'x 411, *2 (4th Cir. 2010) (applying <u>Gross</u> to ADEA claim). Plaintiff, however, in his response in opposition, does not address <u>Gross</u>, and instead argues that he may prevail in an age discrimination case under the "mixed-motive" theory laid out in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 95 (2003).

A review of <u>Gross</u> reveals that plaintiff clearly misstates the law regarding his burden, and that defendant is correct that <u>Gross</u> applies. The Supreme Court in <u>Gross</u> stated that "[t]his Court has never held that [the burden shifting framework in <u>Desert Palace</u> for Title VII claims] applies to ADEA claims." <u>Gross</u>, 129 S.Ct. at 2349.[5] <u>Gross</u> states that the text of the ADEA does <u>not</u> provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor. 129 S.Ct. at 2349. <u>Gross</u> clearly states that the plaintiff in an ADEA case "retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action. <u>Id.</u> at 2351. Plaintiff, then, must prove, by a preponderance of the evidence, that age was the but-for cause of defendant's failure to grant him interviews for the Operations Coordinator and Produce Sales Manager positions. As the Supreme Court stated in <u>Gross</u>, the burden "does not shift to the

---

    [5] Plaintiff's "quotation" of <u>Desert Palace</u>, suggesting that it applied to ADEA claims, where clearly it does not, and there is Supreme Court precedent which explicitly states as much, is blatantly misleading. (<u>See</u> Pl.'s Resp. Opp'n 14.)

employer to show that it would have taken the action regardless of age." Id. at 2352.

    b.  Burden-Shifting Under ADEA and Title VII

  Under the ADEA and Title VII, the plaintiff bears the burden of proving that the defendant's adverse employment decision was motivated by the plaintiff's age, race, or sex. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004). This is called the "pretext" framework. Id. When plaintiff makes out a *prima facie* case to support the discrimination claims, the burden-shifting analysis formulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies to defendant's motion for summary judgment. Hill, 354 F.3d at 285. Only when plaintiff meets the *prima facie* requirements does the burden shift to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). Additionally, the Fourth Circuit has noted that it is not the court's role to second guess employment decisions. Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000).

  To demonstrate a *prima facie* case of age discrimination under the pretext framework, plaintiff must show that: (1) he is a member of a protected class (i.e. show that he is over the age of forty (40)), (2) he was discharged or demoted, (3) at the time of such discharge or demotion he was performing his job duties at a level that met his employer's legitimate expectations, and (4) following his discharge or demotion, he was replaced by a substantially younger individual with comparable qualifications. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006).

  In order to establish a *prima facie* case of discriminatory demotion under Title VII, plaintiff must prove: (1) that he is a member of a protected class, (2) he was qualified for his job and his performance was satisfactory, (3) despite his qualifications he was removed from his job, and (4)

8

after his removal, the job remained open to similarly qualified applicants. Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004).

Additionally, as defendant points out, plaintiff appears to characterize his claim as a failure to promote in his response in opposition, despite the fact that the complaint characterizes plaintiff's failure to receive the Operations Coordinator position as a demotion. (Compl. ¶ 29.) To establish a *prima facie* case of failure to promote under Title VII, plaintiff is required to show that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; (4) he was rejected, and (5) the position remained open or was filled by a similarly qualified applicant outside the protected class. See Williams v. Carolina Healthcare Sys., Inc., 2011 WL 5148971 at *1 (4th Cir. 2011) (citing Page v. Bolder, 645 F.2d 227, 229-30 (4th Cir. 1981)).

As for the newly created position of Operations Coordinator, plaintiff has failed to establish a *prima facie* case under any of the burden-shifting frameworks set forth above. Plaintiff cannot meet the final prong of any of the tests - that he was replaced by a substantially younger individual with similar qualifications, or that the position he applied for was filled by a similarly qualified applicant outside of the protected class. Plaintiff concedes that the individual to whom the Operations Coordinator position was offered was over the age of forty (40), and thus was a member of the protected class, like plaintiff. (See Resp. Opp'n 15 n.2.)[6]

Plaintiff's response to defendant's motion for summary judgment redirects his principle arguments for age discrimination to the fact that he was not permitted to interview for the produce

---

[6] Additionally, the court notes that plaintiff cannot make out a discriminatory demotion claim as to the Operations Coordinator or Produce Sales Manager positions because he cannot show that he was removed from a job and after his removal, the job remained open to similarly qualified applicants. Plaintiff admits that his former job was terminated and no longer existed after the reorganization. (Pl.'s Depo. 69:11-16; 91:19-25.)

9

sales manager position. The facts show that plaintiff is over forty (40) and thus a member of the protected class. He suffered an adverse employment action in that he was not permitted to interview for the produce sales manager position. There is also no dispute that at the time of plaintiff's demotion he was performing his job duties satisfactorily. Under the fourth prong, plaintiff was replaced by a younger individual, Tyson, who is under forty (40), and thus outside the protected class. Accordingly, plaintiff has stated a *prima facie* case of age discrimination as to the produce sales manager position.

However, under the burden-shifting framework, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. St. Mary's Honor, 509 U.S. at 506-07. The facts in the record reveal that defendant has sufficiently articulated a legitimate, nondiscriminatory reason for not granting plaintiff an interview for this position and that plaintiff offers no evidence to the contrary. Plaintiff interviewed for the produce sales manager position in 2009, was interviewed by Coates, and was not offered the position because the other applicant outperformed plaintiff in interviews and was, in Coates's opinion, a better qualified candidate, specifically with regard to her job skills and prior experience. (Coates Decl. ¶¶ 7-8, 11.) When plaintiff reapplied for the position in 2010, Coates was again the individual who granted the interviews. Coates did not interview plaintiff

> [B]ecause I had interviewed him three times in just over seven months, including once for the pre-organization Produce Sales Manager positions. I was fully aware of [plaintiff's] job skills and abilities, as well as the requisite skills and abilities necessary for the [Produce Sales Manager position]. I knew that [plaintiff's] skills, abilities and experience would not make him the best qualified individual for the post-reorganization Produce Sales Manager role.

(Coates Decl. ¶ 20.)

Taken into consideration with other facts in the record, defendant has articulated a legitimate, non-discriminatory reason for not granting plaintiff an interview for the produce sales manager position, and plaintiff has offered no evidence in rebuttal. The individual in charge of interviewing for the position plaintiff wanted stated that based on numerous prior interviews of plaintiff, he was very familiar with plaintiff's qualifications and that plaintiff simply did not meet the necessary qualifications for the job. Plaintiff does not dispute this. Additionaly, plaintiff did not believe Coates ever discriminated against him in any way; in fact, he believed Coates treated him fairly. (Pl.'s Depo. 21:8-15.) While plaintiff attempts to suggest that Smothers, the individual who plaintiff alleges made derogatory comments regarding age, was involved in the interviewing process, noting plaintiff cites and nothing in the record suggests that Smothers had anything to do with the decision of whether or not to grant plaintiff an interview for the produce sales manager position. (Smothers Depo. 14:10-16; Smothers Decl. ¶¶18-19.)[7] To the contrary, the record reveals that Coates made the decision with regard to the produce sales manager position, and nothing in the record suggests anything that would attribute a discriminatory basis to his decision. Speculation as to defendant's motives, especially when the evidence in the record suggests that such motives were motivated by legitimate reasons, is inadequate to support a claim of intentional discrimination. Lovelace v. Sherwin-Williams, 681 F.2d 230, 241-42 (4th Cir. 1982).

To the extent plaintiff also raises a claim for failure to promote, he fails to make a *prima facie* case as to this claim because he cannot meet the third prong of that test - demonstrating that

---

[7] Additionally, the court notes that the alleged comments made by Smothers regarding age do not appear, on their face, to be derogatory. While plaintiff attempts to suggest that comments about vacation were meant to refer to his age, the lack of evidence in the record supporting this speculation greatly minimizes the impact of Smothers' alleged comments.

he was qualified for the position. As the above analysis indicates, the Coates testimony revealed a legitimate, nondiscriminatory reason that Coates declined to offer plaintiff an interview for the produce sales manager position - Coates found plaintiff to be unqualified. Additionally, Coates had unique opportunity to evaluate plaintiff's qualifications as he had interviewed him three times in a seven-month period. Plaintiff acknowledges that Coates interviewed him at least twice. (Pl.'s Depo. 109:6-9.) As noted above, plaintiff did not believe that Coates discriminated against him.

Accordingly, for the reasons stated above, plaintiff has failed to demonstrate a genuine issue of material fact with respect to his claims for age discrimination, discriminatory demotion, and failure to promote, and the court grants defendant's motions for summary judgment as to the same.

Plaintiff's complaint and EEOC charge also allege discrimination on the basis of race and gender under Title VII. Plaintiff advances no facts nor argument in support of these claims. As for plaintiff's failure to get an interview for the Operations Coordinator position, the record contains ample, undisputed evidence that the recipient of that position was also a white male over the age of forty (40), and thus no inference of discrimination on the basis of plaintiff's race or gender is possible with regard to that position.

The only plausible argument it seems plaintiff raises in support of these claims is that because Tyson, the recipient of the produce sales manager position, is black and female, plaintiff was discriminated against because she was selected instead of him. For reasons discussed above, the court cannot accept this argument, as defendant has articulated a legitimate, nondiscriminatory reason for the selection of Tyson. In light of plaintiff's failure to allege any facts in support of these claims, and failure to make any argument in support of these claims in response to defendant's motion for summary judgment, the court grants defendant's motion as to the Title VII claims for race

12

and gender discrimination.[8]

Lastly, the court addresses plaintiff's claim for NIED.[9] To state a claim for NIED, a plaintiff must allege: (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." McAllister v. Ha, 347 N.C. 638, 646, 496 S.E.2d 577, 582-83 (1998) (citations omitted). Under North Carolina law, "severe emotional distress" includes any emotional or mental disorder, including neurosis, psychosis, chronic depression, phobia, or "any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Id.

In a claim for NIED, a plaintiff cannot simply restate facts regarding intentional behavior that form the basis for a claim of IIED to form a claim for NIED. See, e.g., Mitchell v. Lydall, Inc., 1994 WL 38703, at *3 (4th Cir.1994) (finding a claim for NIED is subject to dismissal when "the material factual allegations charge nothing but intentional acts"). Additionally, even if plaintiff alleges negligent conduct, a plaintiff claiming NIED must still prove that her employer should have realized that its conduct involved an unreasonable risk of causing emotional distress. See Faulkner v. Tyco

---

[8] Plaintiff's response in opposition contains a confusing request that should the court dismiss plaintiff's ADEA and Title VII claims, plaintiff would ask that the dismissal be without prejudice so that plaintiff may bring a state action based on violation of North Carolina public policy. Simultaneously, plaintiff appears to ask the court to exercise supplemental jurisdiction over a claim that defendant has violated the North Carolina Equal Employment Practices Act ("NCEEPA") N.C. Gen. Stat. § 143-422.2, which prohibits discrimination on the basis of age under North Carolina law. Plaintiff's request is denied where it appears plaintiff raised no such claim in his complaint. The court also notes that there is no private right of action under the NCEEPA. See Smith v. First Union Natl. Bank, 202 F.3d 234, 247 (4th Cir. 2000).

[9] While no party challenges the court's exercise of jurisdiction over the NIED claim, the court notes for the record that it possesses pendent jurisdiction over this state law claim under United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966), where the state claim in this matter "derive[s] from a common nucleus of operative fact" as plaintiff's federal claims, and the state claim would be expected to be tried in one judicial proceeding. See, e.g., Frykberg v. State Farm Mut. Auto. Ins. Co., 557 F.Supp. 517, 518 (D.C.N.C. 1983).

Electronics Corp., 552 F.Supp.2d 546, 559 (M.D.N.C.,2008) (citing Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)). The plaintiff must also show that her employer was aware that such distress might result in illness or bodily harm. Id.

Upon careful review of the complaint, plaintiff's response, and the record, the court finds that plaintiff has not only failed to demonstrate a genuine dispute of material fact as to his NIED claim, but has failed to show facts that would entitle him to relief on this claim. At the outset, it appears that plaintiff alleges only intentional acts by defendant. Additionally, plaintiff offers no facts in support to show that defendant should have realized that not offering plaintiff interviews for the Operations Coordinator and produce sales manager positions would involve an unreasonable risk of causing emotional distress. Lastly, plaintiff admits he has not seen a doctor for his alleged emotional injuries and fails to present any facts that would show he has suffered severe emotional distress. (Pl.'s Depo. 116:21-25.) Accordingly, the court grants defendant's motion for summary judgment as to plaintiff's NIED claim.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE # 16) is GRANTED as to all claims. The Clerk is DIRECTED to close this case.

SO ORDERED, this the 20 day of December, 2011.

LOUISE W. FLANAGAN
United States District Judge

14